IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02778-CNS-MEH

BRIAN BRASS,

    Plaintiff,

v.

JOSEPH BIDEN, President of the United States, and
GINA M. RAIMONDO, Secretary of the U.S. Department of Commerce,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendants' Motion to Dismiss. ECF 25. Plaintiff brings this lawsuit against Defendants alleging violations of his constitutional rights under the Fourth Amendment. Defendants move for dismissal on the basis of Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. The Court respectfully recommends granting the Motion.

## BACKGROUND

    For the purposes of this recommendation, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his Complaint. ECF 1; *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis).

    The subject of Plaintiff's lawsuit is a Presidential Executive Order, titled Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, No. 14,043, 86 Fed. Reg. 50989

(Sept. 9, 2021) ("EO 14043"). President Biden signed EO 14043 on September 9, 2021. *Id*. It requires each agency to "implement, to the extent consistent with applicable law, a program to require COVID vaccination for all of its Federal employees, with exceptions only as required by law." *Id*. Plaintiff is a federal employee at the National Institute of Standards and Technology, or NIST, an agency under the U.S. Department of Commerce, of which Defendant Gina Raimondo is the Secretary. ECF 35 at 2. Plaintiff has submitted an exemption request from EO 14043's vaccine mandate. ECF 25-1. While awaiting a decision on this request, Plaintiff will not be subject to adverse action for not receiving the vaccine. *Id*.

Plaintiff challenges EO 14043 for three reasons. ECF 1. First, he asserts EO 14043 lacks any constitutional or statutory authority. *Id*. at 3. Second, he claims EO 14043 violates his Fourth Amendment right to be secure in his person. *Id*. at 3-4. Finally, he objects to EO 14043 because he is "subject to or threatened with disciplinary action[]. . . includ[ing] termination of employment." *Id*. at 4. Plaintiff asks this Court to invalidate EO 14043. *Id*. at 4-5.

The Court also includes for consideration Plaintiff's filings of ECF 51, 53, 59, 62, and 64. The Court does so for the sake of thoroughness to the extent they lend insight or additional information about Plaintiff's circumstances and claim for relief.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when

specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id*. (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1002-03 (citations omitted). The present Motion is a facial attack on subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

II.     **Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual

3

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

4

*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

### III.     Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

### ANALYSIS

Plaintiff leaves unclear what legal authority permits him to sue Defendants. It appears that he is attempting to bring a claim directly under the United States Constitution, specifically the

Fourth Amendment. Defendants raise three issues in their Motion. ECF 25. First, the Court lacks subject matter jurisdiction; second, Plaintiff's claims are unripe; and third, Plaintiff fails to state a cognizable claim for relief. *Id.* at 5-6. As a primary matter, the Court must determine whether the President enjoys executive immunity in this suit.

In lawsuits against the President, courts must determine whether the action is barred by executive immunity. *Atlee v. Nixon*, 336 F. Supp. 790 (E. D. Pa. 1972). The purpose of executive immunity is to ensure that the President is not distracted from his duties by a need to defend himself in court. *Id*. at 791-92. Generally, the President will remain in the suit if found to be an indispensable party and if not, he will be dismissed. *Id*. at 792. The President is an indispensable party if he is the only named party in the suit or if he was the only executive official to take part in the alleged action. *Id*. (noting that "it would be a rare situation where executive action was not participated in by any other government officials."). However, "[i]t is not open to doubt that executive action may be restrained indirectly by enjoining a cabinet member from enforcing an executive order found to violate the law." *Id*. In *Atlee v. Nixon*, the court explained that because the Secretary of Defense was a defendant in the suit, it would be appropriate to dismiss the President without prejudice as it would not deny remedy to the plaintiffs. *Id*. at 792.

Here, it is appropriate to dismiss the President on the grounds of executive immunity. Defendant Raimondo is a party in this suit and the executive official who would enforce EO 14043. She may be restrained from enforcing EO 14043 if it is found to violate the law. There is little indication that dismissing the President from this action would deny remedy to Plaintiff. Therefore, this Court respectfully recommends that the President be dismissed without prejudice. However, there are other reasons that the claims should be dismissed.

I.  **The Court Lacks Subject Matter Jurisdiction**

Courts may not exercise subject matter jurisdiction if a statutory scheme has expressly precluded them from doing so. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–16 (1994). To determine if a statutory scheme precludes a lawsuit, courts use a two-step inquiry established by the Supreme Court in *Thunder Basin*. *Id*. First, courts consider "whether the statutory scheme forecloses all meaningful judicial review." *Id*. at 207; *see Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991). Meaningful review requires that an appeal to an Article III court is available in due course. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 17 (2012). Second, courts must determine "the extent to which the plaintiff's claims are wholly collateral to the statute's review provisions." *Thunder Basin*, 510 U.S. at 212.

The Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101, 3301-03, 7512-13, 7701-03, is "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin*, 567 U.S. at 5. "Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship." *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000); *see also Franken v. Bernhardt*, 763 F. App'x 678, 682 (10th Cir. 2019). "Under the [CSRA][] . . . certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Elgin*, 567 U.S. at 5. Adverse actions "are removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less." 5 U.S.C. § 7512. "An employee against whom an action is proposed is entitled to" advanced written notice, reasonable time to respond, an attorney, and a written decision. 5 U.S.C. § 7513. An employee may challenge an agency's adverse actions through appeals to the Merit Systems Protection Board ("MSPB"). *Kloeckner v. Solis*, 568 U.S. 41, 43 (2012); *see also Elgin*, 567 U.S. at 1 (explaining that "[a] qualifying employee has the right to a hearing before the [MSPB][.]")

The MSPB will decide to either affirm or deny the agency's action. *Id*. If affirmed, the MSPB's decision may be appealed to the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703; *see also Baca v. Dep't of the Army*, 983 F.3d 1131, 1137 (10th Cir. 2020). The Court of Appeals for the Federal Circuit has exclusive jurisdiction to review the MSPB's decisions. *Id*.; *see also Elgin*, 567 U.S. at 6.

Under the *Thunder Basin* test, the CSRA divests district courts of subject matter jurisdiction for suits concerning EO 14043. First, MSPB decisions are eligible for appeal to the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703. The Court of Appeals for the Federal Circuit is an Article III court. *Id*. In this case, the adverse action would be termination for being unvaccinated without a valid exemption, and the MSPB decision would be affirming or denying this action. Second, the CSRA provides an avenue of relief for employees subject to adverse action. 5 U.S.C. §§ 7701-03. Other courts have held that the CSRA precludes actions arising out of EO 14043 for these reasons.

In *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 22, 2022), the Fourth Circuit held that the district court lacked subject matter jurisdiction over lawsuits by federal employees concerning EO 14043. There, the plaintiffs had no pending exemption request and were attempting to avoid imminent termination through an injunction. *Id*. at *2. The district court reached the merits of the claims and ruled against the plaintiffs; however, the Fourth Circuit vacated and remanded with instructions to dismiss the case. *Id.* at *1, 8. The Fourth Circuit explained that vacating the case was necessary because the CSRA divested district courts of jurisdiction on these types of actions. *Id*. at *8. "Congress stripped the courts of jurisdiction to hear certain actions involving federal employment." *Id*. at *1. "As applied here, the CSRA allows

[plaintiffs] to challenge their working conditions and preemptively contest their termination." *Id.* at *5.

Here, the Court is precluded from adjudicating Plaintiff's claims for similar reasons. Plaintiff is a federal employee challenging EO 14043, has applied for an exemption, and is awaiting a decision on this request. ECF 35 at 2, 15. Plaintiff states that he challenges EO 14043 as a citizen (*id.*), but its vaccine mandate only applies to him because he is a federal employee. EO 14043 requires vaccinations only if an agency denies his exemption request. *Id.* If denied and still unvaccinated, he is subject to his employer's adverse actions. *Id.* His proper avenue to challenge those adverse actions is through the CSRA's scheme. 5 U.S.C. §§ 7701-03. On this basis, Plaintiff's claims should be dismissed.

**II.     Plaintiff's Claims are Not Ripe**

There are additional bars that preclude Plaintiff's claims. "[F]or a claim to be justiciable under Article III, it must be shown to be a ripe controversy." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). The doctrine of ripeness stems from the "requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting our jurisdiction." *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011). It is intended to prevent premature judicial decisions "until the controversy is presented in 'clean-cut and concrete form.'" *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (brackets and internal citations omitted) (quoting *Renne v. Geary*, 501 U.S. 312, 313 (1991)). In other words, ripeness is a timing inquiry. *Id.*; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (discussing the need "to protect the agencies from judicial interference until an administrative decision has been formalized[.]"). If a claim is contingent on uncertain future events, which may not occur, then it is not ripe for judicial review. *Texas v. United States*, 523 U.S.

296, 300 (1998); *see also Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).

The question of ripeness properly falls within a Rule 12(b)(1) motion to dismiss. *New Mexicans for Bill Richardson*, 64 F.3d at 1499. A Rule 12(b)(1) motion "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog*, 442 F.2d at 677. Even so, a Rule 12(b)(1) movant may go beyond those allegations "by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests" without converting the motion into one for summary judgment. *Maldonado v. Prudential Ins. Co. of Am.*, No. 10-cv-00074-PAB-MEH, 2011 WL 819751, at *1 (D. Colo. Mar. 2, 2011). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff bears the burden of establishing that this Court has jurisdiction to hear his claims.

Courts consider three factors to evaluate ripeness: "(1) whether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000) (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). In other words, courts must assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

In *United States. v. Cabral*, 926 F.3d 687, 695 (10th Cir. 2019), the plaintiff's claims were not ripe for review because the alleged "hardship" depended on scenarios that had not yet occurred. Although a hardship *could* arise, the Tenth Circuit held that a lack of a present one precluded judicial review as the claims were not ripe. *Id*. (emphasis added). "This holds true even if the

potential hardship is significant, and even if the challenge could theoretically be analyzed without waiting for its application." *Id*. at 696 (quoting *Unites States v. Ford*, 882 F.3d 1279, 1286-87 (10th Cir. 2018)).

In this case, Plaintiff has a pending vaccine exemption request. ECF 25-1. His injury, termination for being unvaccinated, is not certain to occur. It is contingent on a denial of his exemption request. Plaintiff does not face adverse action for his unvaccinated status while the agency is considering his exemption request. ECF 25. Should the agency deny his exemption request, and terminate Plaintiff due to his unvaccinated status, his form of available recourse is through the CSRA's remedial scheme. 5 U.S.C. §§ 7701-03. Because they are not ripe, Plaintiff's claims should be dismissed for lack of justiciability.

### III.     Failure to State a Claim Under Rule 12(b)(6)

A.     <u>Failure to State a Fourth Amendment Violation Claim</u>

Plaintiff alleges EO 14043 violates his Fourth Amendment right to be secure in his person because it requires him to be injected with an "experimental foreign substance." ECF 35 at 6; ECF 1 at 3-4. However, he does cite to any legal authority or present any legal argument to explain how it infringes on his Fourth Amendment right. Nevertheless, vaccine mandates have been approved in other contexts without raising the same Fourth Amendment concern mentioned in this case.

As other courts have explained, vaccine mandates such as EO 14043 are more appropriately considered as a condition of employment than a violation of the right to bodily autonomy. "[T]he right that is being burdened is the right to employment[.]" *Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 139 (N.D.N.Y. 2021); *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 226, 294 (2d Cir. 2021) (holding that "[v]accination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."); *Norris v. Stanley*, 567

11

F. Supp. 3d 818, 821, 824 (W.D. Mich. 2021) (finding that the "vaccination policy does not force [p]laintiff to forego her rights[.] [B]ut if she chooses not to be vaccinated, she does not have the right to work at MSU at the same time."); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 644 (E.D. Kty. 2021) (explaining that "[p]laintiffs are choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice.").

There is a long history of recognizing vaccine mandates in the United States. In *Zucht v. King*, 260 U.S. 174, 175 (1922), the Supreme Court upheld a vaccination requirement for public school students. The Court held that it was well within the powers of the state to mandate a vaccine requirement for the safety of the community at large. *Id*. at 177. It explained that state and municipal legislatures "may vest in its officials broad discretion in matters affecting the application and enforcement of a health law." *Id*. at 176. Later, in *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995), it found that vaccine mandates did not infringe on the Fourth Amendment. "In the 1991–1992 school year, all 50 States required public school students to be vaccinated against diphtheria, measles, rubella, and polio." *Id*. (quoting U.S. Department of Health & Human Services, Public Health Service, Centers for Disease Control, State Immunization Requirements 1991–1992, p. 1).

When challenged on Fourth Amendment grounds, district courts within the Tenth Circuit have upheld EO 14043's vaccine mandate. In *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1264 (W.D. Okla. 2021), the plaintiffs sought to invalidate EO 14043 on Fourth Amendment grounds. There, the plaintiffs argued EO 14043 violated their Fourth Amendment rights because it "impermissibly restrain[ed] the liberty of [their] person[s]." *Id*. at 1263. In addition, the plaintiffs alleged that the "vaccine mandate is an unconstitutional . . . seizure of the person under the Fourth Amendment." *Id*. The court found that the vaccine mandate did not "amount to a Fourth

Amendment seizure" and that "[e]mployment-related 'deprivations' of freedom happen every day." *Id*. at 1264. Those plaintiffs were not "'being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination.'" *Id*. (quoting *Smith v. Biden*, 2021 WL 5195688, at *8 (D.N.J. Nov. 8, 2021)). In addition, it explained that using the Fourth Amendment in this context was not proper, as the allegations did not arise out of the criminal context. *Id*.

Here, Plaintiff is a federal employee who is only subject to the vaccine mandate because his employer is a federal agency. ECF 1; ECF 35; Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. at 50,989. EO 14043 does not implicate the Fourth Amendment; rather, it acts as an employment-related deprivation of freedom. *Oklahoma v. Biden*, 577 F. Supp. 3d at 1264. Plaintiff retains a right to refuse vaccination, but if denied an exemption, he may be subject to the consequences of his agency employer. The argument presented here is not a violation of the Fourth Amendment. Rather, it is one concerning his interest in continued employment. The Department of Commerce is not coercing him to receiving the vaccine. Plaintiff has the option to find another place of work where there is no vaccine mandate. Again, the right to be secure in one's person generally concerns the right to be free from warrantless searches, not bodily autonomy. Plaintiff's Fourth Amendment claim should be dismissed.

B. <u>Failure to State a Claim Related to the Scope of the President's Authority to Promulgate EO 14043</u>

The Complaint states that EO 14043 "does not direct that a law, statute, or congressional policy be executed in a manner prescribed by Congress" and "was not authorized by the Constitution[.]" ECF 1 at 3. As stated above, the Supreme Court has held that legislatures may delegate to its officials "broad discretion in matters affecting the application and enforcement of a health law." *Zucht*, 260 U.S. at 176. EO 14043 cites the U.S. Constitution as a direct source of authority. Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg.

13

at 50,989. In addition, it relies on 5 U.S.C. §§ 3301, 3302, and 7301 as its statutory bases. These civil service laws grant the President the authority to prescribe and enforce regulations regarding employee fitness and health. In other words, the Congress has delegated to the President the authority to order federal employee health requirements.

There is a history of presidents issuing executive orders to maintain or improve employee health and fitness. In 1986, President Reagan had issued an Executive Order, "Drug Free Workplace Program." Exec. Order No. 12,564, 51 Fed. Reg. 32,889 (Sept. 15, 1986). This executive order directed those current federal employees to abstain from illegal drug use. *Id*. The executive order cites that the purpose of its issuance was to better protect the health of federal employees and the public at large. *Id*. It similarly referenced the same statutes as EO 14043. *Id*. President Clinton issued an executive order, "Protecting Federal Employees and the Public From Exposure to Tobacco Smoke in the Federal Workplace." Exec. Order No. 13,058, 62 FR 43,451 (Aug. 9, 1997). It did not ban private use of cigarettes by federal employees; it only directed where cigarette use was permitted on federal property. *Id*. The intention of that executive order was to protect federal employee health and fitness. *Id*.

Here, President Biden issued EO 14043 as a health measure for the federal employees under the executive branch, and it does not apply to citizens at large. Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. at 50,989. Plaintiff is only subject to the mandate due to his employment status, and he has not provided any case law holding that EO 14043 is invalid. This Court has conducted its own inquiry, and it finds no such case law. Plaintiff's claim that President Biden exceeded his authority should be dismissed.

### IV. No Leave to Amend

Finding that Plaintiff has not pleaded a cognizable claim, the Court now turns to the issue of whether to recommend dismissal with or without prejudice. In cases involving pro se litigants, the Tenth Circuit has found that courts should dismiss with leave to amend where there is a possibility that the litigant can correct the defect in the pleading. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Dismissal without prejudice is preferable where the deficiencies are "likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Id*. It is notable, however, that these litigants "are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim." *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014). This is especially true where the litigant cannot succeed on the alleged facts. *Id*.

Plaintiff already has received notice from this Court of the potential defects with his Complaint. ECF 11. It does not appear that Plaintiff would be able to state a plausible claim based upon this set of facts. There is little reason to believe that an amendment will correct the above shortcomings. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). "We have stated that '[d]ismissal of a pro se complaint for failure to state a claim is proper only where . . . it would be futile to give him an opportunity to amend.'" *Id*. (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)). Therefore, the Court recommends Plaintiff's claim be dismissed with prejudice.

### **CONCLUSION**

Accordingly, the Court respectfully recommends **granting** Defendants' Motion [filed April 18, 2022; ECF 25], dismissing the claim with prejudice.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings

Respectfully submitted this 22nd day of September 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.